IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

DAN BENNETT and KAREN )
BENNETT )
 )
 )
    Plaintiffs, )
 )
 )
 )
vs. ) No. _____
 )
 ) JURY DEMAND
 )
CMH HOMES, INC. d/b/a LUV )
NASHVILLE )
 )
and )
 )
SOUTHERN ENERGY HOMES RETAIL )
CORPORATION d/b/a SOUTHERN )
ENERGY HOMES, INC., )
 )
    Defendants. )

---

## VERIFIED COMPLAINT

---

COMES NOW Plaintiffs DAN BENNETT AND KAREN BENNETT, by and through counsel, and for their Complaint against Defendants CMH HOMES, INC. d/b/a LUV NASHVILLE and SOUTHERN ENERGY HOMES RETAIL CORP. d/b/a SOUTHERN ENERGY HOMES, INC. states as follows:

    1.    Plaintiffs Dan Bennett and Karen Bennett are residents of the State of Tennessee.

    2.    Defendant CMH Homes, Inc. d/b/a Luv Nashville (hereinafter "CMH") is a corporation organized and operating under the laws of the State of Tennessee with its

principle place of business at 5000 Clayton Road, Maryville, Tennessee 37804 and can be served via its register agent, to wit: C.T. Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929. Upon information and belief, CMH was the manufacturer and/or the retailer and/or installer of the manufactured home, serial number DSEAL16879ABC (hereinafter "Home"). Further, at all times material hereto, the individuals and/or companies with whom the Bennetts dealt with respect to the transactions and events herein were affiliated with and/or the authorized agent of and/or operating at the direction of and/or for the benefit of CMH. Additionally or in the alternative, Defendants knew or should have known of the propensity of its agents to act in a manner as set forth herein. Therefore, pursuant to the laws of agency, CMH is either directly or vicariously liable for the actions of each of the individuals and/or companies set forth herein.

3. Defendant Southern Energy Homes Retail Corporation d/b/a Southern Energy Homes, Inc. (hereinafter "Southern Energy Homes") is a corporation organized under the laws of the State of Delaware and is duly operating and doing business in the State of Tennessee with its principle place of business at 5000 Clayton Road, Maryville, Tennessee 37804 and can be served via its register agent, to wit: C.T. Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929. Upon information and belief, Southern Energy Homes was the manufacturer and/or the retailer and/or installer of the manufactured home, serial number DSEAL16879ABC (hereinafter "Home"). Further, at all times material hereto, the individuals and/or companies with whom the Bennetts dealt with respect to the transactions or events herein were affiliated with and/or the authorized agent of and/or operating at the direction of and/or for the benefit of Southern Energy Homes. Additionally or in the alternative,

Defendants knew or should have known of the propensity of its agents to act in a manner as set forth herein. Therefore, pursuant to the laws of agency, Southern Energy Homes is either directly or vicariously liable for the actions of each of the individuals and/or companies set forth herein.

4. Venue and jurisdiction are proper in this Court.

5. In or about December of 2004, the Bennetts were considering purchasing a new home. During the course of the consideration of such a purchase, they visited CMH's retail lot of manufactured homes located in Davidson County, Tennessee and, ultimately, spoke with Linda Hahn, a sales representative. Ms. Hahn and other authorized agents of Defendants made several representations to the Bennetts to induce the purchase of a CMH manufactured home, including but not limited to, that a manufactured home was more durable and of a higher quality than a conventionally built home; that CMH and its affiliates would timely and properly install the home; that CMH had been in business for many years and enjoyed a large base of very satisfied customers; that a CMH home was the most efficient use of the Bennett's money and that CMH would provide a one year warranty and would promptly and thoroughly honor such warranty.

6. As a direct result of each of the representation outlined herein and additional representation made by agents and/or employees of Defendants, and the written literature provided to the Bennetts by Defendants, on or about January 27, 2005, the parties entered into a Sales Agreement, pursuant to which the Bennetts would purchase the property located at 345 Putman Well Road, Rockyvale, Tennessee and a new, fully installed Southern Energy Homes manufactured home, along with appliances, for the amount of one hundred and sixty thousand and two hundred and

thirty dollars ($160,230). Additionally, the Defendants would install a brick foundation, two decks and a water line. The Sales Agreement was executed in Davidson County. (See Exhibit A).

7. On May 15, 2005, the parties executed a Retail Closing Agreement (hereinafter "Agreement") pursuant to which the Defendants would deliver and install a manufactured home, serial number DSEAL16879ABC at 345 Putman Well Road, Rockvale, Tennessee 37153, including appliances, two decks and a brick skirting. The Agreement was executed in Davidson County. (See Exhibit B).

8. The Agreement states in Paragraph 1: "Retailer's limited warranty provides that: For new homes, installation of the initial home site will be completed in accordance with applicable governmental requirements . . .".

9. Paragraph 3 states in pertinent part, "All implied warranties, including implied warranties of merchantability, habitability, or fitness for a particular purpose, are disclaimed to the fullest extent permitted by applicable law, and otherwise extend only for the period of Retailer's applicable limited warrant for the home." The Bennetts were provided with a Homeowner's Manual from Southern Energy Homes that contains a limited warranty.

10. Pursuant to the Agreement, the Defendants delivered and set up the Home. Within the first year, the Bennetts notice defects, deficiencies and substandard workmanship. Over the next several months, Bennetts addressed such defects with Defendants. On several occasions, the Defendants inspected and/or allegedly attempted to repair such defects, but rarely were the efforts of Defendants successful.

11. Given the Defendants' refusal and/or inability to resolve major defects and deficiencies of the home, the Bennetts filed a Complaint with the State of Tennessee's

Department of Commerce and Insurance. The Complaint included, but was not limited to the following: not assembled correctly; all three levels of the triple wide were not level; floors uneven, sunken areas, marriage lines were different heights; structural defects in drywall, ceiling and brick foundation; master bath door would not stay open; part of the roof was warped due to improper installation; carpet in the entire house had wrinkles despite carpet being replaced; lights would go very dim when air/heat is powered; vinyl siding continues to be disconnected and falls; vinyl ceiling continues to fall; water accumulation under the house; heat/air not working properly due to vents; inadequate footers; seven inch gap at the end of the house were two parts are to be connected; and the gutters leak.

12. As a result of the Bennett's Complaint, the Department of Commerce and Insurance performed an inspection and provided a list of repairs that needed to be completed and that the frame was bent. To date, such list has not properly been addressed by Defendants.

13. Bennetts and the Defendants have been advised by several experts in the construction industry that the home was not properly assembled, that the house is uneven and such is causing many of the problems they are experiencing with the home. Indeed, on March 30th, 2007, Eric J. Tompos, Vice President of NTA, Inc., an engineer registered with the State of Tennessee, performed an inspection of the Home at the request of Defendants and provided a report to Defendants stating, "At the mateline, the supporting piers should be shimmed tightly against the bottom of the mateline I-beam and in areas where the floor is sagging. The I-beam shall be shimmed as required to remove the sag. If the sag cannot be removed by shimming alone, it may be necessary to disconnect the halves of the home to relieve any restraint created by the

-5-
Case 3:08-cv-01212    Document 1    Filed 12/22/08    Page 5 of 18 PageID #: 5

existing installation." The Defendants represented to the Bennetts that Mr. Tompos was an independent, third party engineer, however, the Bennetts discovered that Mr. Tompos is an engineer for Defendants.

14. Despite the opinion of Mr. Tompos and the opinion of several other experts that have inspected and/or performed work on the subject home, the Defendants have failed to take the proper corrective action and have insisted, even at the time of filing this Complaint, that the Home is "beautiful" and is in "excellent" condition, that they have repaired all defects and deficiencies and/or that such are only "cosmetic" issues. Furthermore, the Defendants have attempted to convince the Bennetts and others that the defects in the Home are a result of actions by the Bennetts.

15. Upon information and belief, the Defendants have characterized the Bennetts as being difficult and have intentionally failed to fulfill the warranties and/or their promises and/or their obligations pursuant to the Federal and State law in retaliation against the Bennetts and/or in an attempt to dissuade the Bennetts from asserting their rights pursuant to the agreements, warranties, and Federal and State law.

16. During the course of conversations with various representatives of the Defendants, the Defendants have admitted to many of the defects listed herein and have promised that such will be addressed. To date, the Defendants have failed to address or repair such defects in a manner consistent with their obligations pursuant to the agreements, the warranties and Federal and State law.

17. At all times material hereto, the Bennetts have paid the mortgage payment pursuant to the Agreement and have otherwise fully fulfilled their obligations

-6-
Case 3:08-cv-01212   Document 1   Filed 12/22/08   Page 6 of 18 PageID #: 6

pursuant to the Agreement.

## COUNT ONE: BREACH OF CONTRACT

18. The Bennetts adopt and re-allege Paragraphs 1-17 above as if fully set forth herein.

19. The parties entered into the agreements as outlined herein and as attached hereto.

20. Defendants materially breached the agreements given the conduct and omissions as outlined herein and by failing to perform all of the material duties or obligations set forth in the subject agreements. Any conduct or actions taken pursuant to the subject agreements were either untimely or inadequate to fulfill the requirements and obligations of the subject agreements

21. In the alternative or in addition, the Bennetts assert thatDefendants further materially breached the contract as Defendants intentionally and knowingly failed to fulfill their obligations pursuant to the agreements and/or the relevant warranties.

22. Defendants materially breached the agreements as Defendants' conduct as set forth herein did not constitute operating in good faith and fair dealing.

23. Defendants materially breached the contract as they failed to meet or exceed the standards set forth pursuant to the National Manufactured Housing Construction and Safety Act, 42 U.S.C. 5401 §§ et seq..

24. Defendants materially breached the subject contract as they failed to design, manufacture, deliver and assemble a product that met both Federal and State standards and/or failed to assemble and/or construction the Home and its attachments in accordance with the standards accepted in the community and in a workmanship-like

manner.

25. As a direct and proximate result of Defendants' breach of contract, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss wages and additional injuries and losses. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled, including, but not limited to recession of the agreements, or, in the alternative, enforcement of the agreements.

## COUNT TWO: BREACH OF WARRANTY

26. The Bennetts adopt and re-allege paragraphs 1-25 above as if fully set forth herein.

27. The Agreement contained express and implied warranties and Defendants provided additional express and implied warranties, including, but not limited to, warranty of merchantability, warranty of habitability, warrant of fitness for a particular use and warranty of workmanship

28. Defendants actions as outlined herein constitute a breach of warranty as the Defendants have failed to act pursuant to the warranties and/or in conformity with 15 U.S.C.A. § 2304 and/or other applicable law.

29. In the alternative, the Bennetts would aver that the Defendants product is defective as defined by law, and, thus, Defendants are strictly liable for the damages set forth herein.

30. As a direct and proximate result of Defendants' breach of contract, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss wages and additional injuries and losses. The Bennetts continue to

incur such costs and losses and seek all damages and remedies to which they are legally entitled, including, but not limited to recession of the agreements, or, in the alternative, enforcement of the agreements.

## COUNT THREE: INTENTIONAL AND/OR RECKLESS MISREPRESENTATION

31. The Bennetts adopt and re-allege paragraphs 1 through 30 above as if fully set forth herein.

32. In the alternative or in addition, the Bennetts assert that Defendants' actions as set forth herein constitute fraudulent and/or reckless misrepresentation as the Defendants' made material misrepresentation as set forth herein, knowing the falsity of such representations and the Bennetts reasonably relied on such misrepresentations

33. Prior to the purchase of the home, the Defendants represented that a manufactured home was a better quality product than a conventional home. Defendants knew that such representations were false and knew that the Bennetts would reasonably rely on such misrepresentations.

34. At all times material hereto, Defendants represented, whether explicitly or implicitly, that Defendants were professional manufacturers and installers of manufactured homes and/or possessed the equipment, materials, knowledge, skill, ability and internal structure to timely and properly complete the obligations pursuant to the subject agreements. Defendants knew that such representations were false and knew that the Bennetts would reasonably rely on such misrepresentations.

35. At all times material hereto, the Defendants represented that the home was or would be manufactured and installed pursuant to Federal and State standards

and that such home met such standards. Defendants knew that such representations were false and knew that the Bennetts would reasonably rely on such misrepresentations.

36. At all times material hereto, the Defendants represented that they were or would be attempting to comply with all obligations pursuant to the Agreement, applicable warranties and Federal and State law. Defendants knew that such representations were false and knew the Bennetts would reasonably rely on such misrepresentation.

37. At all time material hereto, the Defendants represented to the Bennetts that the efforts made to address the defects in the home were genuine and/or that such efforts resulted in a successful repair that complied with the applicable standards set forth by Federal, State law or the promises and warranties made by Defendants. Defendants knew that such representations were false and knew the Bennetts would reasonably rely on such misrepresentation.

38. In the alternative, the Bennetts aver that the Defendants made the aforementioned representations with a reckless disregard for their truthfulness.

39. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled, including recession of the agreements.

## COUNT FOUR: PROMISSORY FRAUD

-10-
Case 3:08-cv-01212    Document 1    Filed 12/22/08    Page 10 of 18 PageID #: 10

40. The Bennetts adopt and re-allege paragraphs 1 through 39 above as if fully set forth herein.

41. In the alternative or in addition, The Bennetts assert that Defendants' actions as set forth herein constitute promissory fraud.

42. Defendants actions as set forth herein constitute promissory fraud as Defendants had no intention to perform pursuant to the material promises as outlined in the agreements and the warranties and/or in a manner consistent with promises and representations made after the sale of the Home and such were made in an effort to deceive the Bennetts. The Bennetts were unaware of Defendants' actual intentions not to perform the promises, however, the Bennetts relied on such promises and were justified in relying on such promises.

43. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled.

### COUNT FIVE: NEGLIGENT MISREPRESENTATION

44. The Bennetts adopt and re-allege paragraphs 1 through 43 above as if fully set forth herein.

45. In the alternative or in addition, the Defendants assert that Defendants' actions as set forth herein constitute negligent misrepresentation.

46. In the alternative, the Bennetts aver that Defendants' actions as set forth herein constitute negligent misrepresentation inasmuch as the false information

provided to the Bennetts occurred as a result of Defendants' negligence. Such information was given to the Bennetts in an effort to effect the subject business transaction and the Bennetts, not knowing the falseness of such information, reasonably relied on such information.

47. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled.

## COUNT SIX: NEGLIGENCE/NEGLIGENCE PER SE

48. The Bennetts adopt and re-allege Paragraphs 1-47 above as if fully set forth herein.

49. Defendants enter into agreements with the Bennetts and had a duty to the Bennetts to perform such work competently, professionally and in accordance with Federal and State law, the building plan and with the standards and procedures of the industry.

50. Defendants failed to design, manufacture, assemble and construct the Home and its attachments in a workman-like manner and in accordance and conformity with the Federal and State law, the building plan and with standards of the industry.

51. Defendants had a duty to Bennetts to ensure each individual performing work under the agreements was licensed, if applicable, and possessed sufficient experience and ability to perform such work timely and in accordance with the standards of the industry and to supervise or direct such individuals to ensure such

work was performed and completed timely and in accordance with the standards in the industry and the standards.

52. The Defendants knew or should have known that the individuals performing the work pursuant to the Agreement were not capable of performing the necessary work. Furthermore, Defendants failed to properly supervise the project and ensure such was completed timely and in conformity and in accordance with the building plan, Federal and State law and the standards in the industry.

53. Additionally, or in the alternative, the Defendants are guilty of violating one or more of the provisions of Federal or Tennessee law or rules and regulations promulgated pursuant to Federal and/or Tennessee law as referenced herein, which were in full force and effect on the date and time of said incidents referenced herein, and which statutes and/or regulations were enacted for the benefit of the public such as the Bennetts, constituting negligence per se, and were the direct and proximate cause of the Bennetts' injuries and damages:

54. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled.

## COUNT SEVEN: VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

55. The Bennetts adopt and re-allege paragraphs 1 through 54 above as if fully set forth herein.

56. Pursuant to T.C.A. § 62-6-136 et seq. and as otherwise prescribed by law,

the conduct of the Defendants as set forth in this Complaint was deceptive and unfair and in violation of the Tennessee Consumer Protection Act.

57. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled, including rescission of the agreements.

## COUNT EIGHT: CIVIL CONSPIRACY

58. The Bennetts adopt and re-allege paragraphs 1 through 57 above as if fully set forth herein.

59. Two or more agents of the Defendants conspired to accomplish the unlawful action of the Defendants as set forth herein.

60. One or more agents of the Defendants participated in the overt acts as set forth herein in furtherance of the conspiracy.

61. As a direct and proximate result of Defendants' aforementioned actions and omissions, the Bennetts have suffered damages which include, but are not limited to, monetary damages, loss of wages, mental anguish, loss of the enjoyment of life and additional losses and injuries. The Bennetts continue to incur such costs and losses and seek all damages and remedies to which they are legally entitled, including rescission of the agreements.

## COUNT NINE: PUNITIVE DAMAGES

62. The Bennetts adopt and re-allege Paragraphs 1 through 61 above as if

fully set forth herein.

63. The foregoing conduct by Defendants was intentional, malicious, reckless and/or outrageous, thus, entitling the Bennetts to punitive damages.

**WHEREFORE, PREMISES CONSIDERED**, the Bennetts pray that proper process issue and be served upon Defendants, requiring them to answer the Complaint within the time prescribed by law and a judgment against the Defendants for:

(1) Compensatory damages in an amount not to exceed two hundred and fifty thousand dollars ($250,000);

(2) Incidental and special damages in an amount not exceed two hundred and fifty thousand dollars ($250,000);

(3) If applicable, recession of the agreements or, in the alternative, enforcement of the agreements;

(4) Enforcement of the warranties pursuant to 15 U.S.C.A. § 2304 et. seq.;

(5) Treble damages pursuant to the TCPA found at T.C.A. § 62-6-136 et seq;

(6) Punitive damages and attorneys' fees as applicable and as proven at trial;

(7) Discretionary and court costs;

(8) Pre-judgment and post-judgment interest;

(9) A jury of twelve (12) persons to hear this cause; and

(10) Such other and further general relief as this Court deems appropriate and just according to the proof.

Respectfully Submitted,

**HAYNES & FREEMAN, PLC**

<u>/s/ Kirk L. Clements</u>
KIRK L. CLEMENTS, BPR No. 20672
Attorneys for the Plaintiff
140 North Main Street
Goodlettsville, Tennessee 37072
(615) 859-1328
kirk@haynes-freeman.com

## **AFFIDAVIT**

I, Cranford D. Bennett, having been duly sworn, attests that the facts and assertions found in this Complaint are true and accurate to the best of my knowledge and ability.

Further, Affiant sayeth not.

Witness my hand this the __19th____ day of _____December_____, 2008.

                                            __/s/ Cranford D. Bennett_____
                                            CRANFORD D. BENNETT

Sworn to and subscribed before me,

this __19th day of _____December_____, 2008.

__/s/ MINDI NOVAK_____
NOTARY PUBLIC

## AFFIDAVIT

I, Karen S. Bennett, having been duly sworn, attests that the facts and assertions found in this Complaint are true and accurate to the best of my knowledge and ability.

Further, Affiant sayeth not.

Witness my hand this the ___19TH___ day of ___DECEMBER_____, 2008.

                                ___/s/ Karen S. Bennett_____
                                KAREN S. BENNETT

Sworn to and subscribed before me,

this __19__ day of ___December_____, 2008.

_____
NOTARY PUBLIC

/s/ MINDI NOVAK_____