UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAN BENNETT and KAREN BENNETT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:08-cv-01212 ) ) |
| CMH HOMES, INC. d/b/a LUV NASHVILLE, and SOUTHERN ENERGY HOMES RETAIL CORPORATION d/b/a SOUTHERN ENERGY HOMES, INC. | ) JUDGE SHARP ) MAGISTRATE JUDGE BROWN ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM**

Defendant CMH Homes, Inc. ("CMH Homes") filed a Motion for Summary Judgment (Docket Entry No. 56), to which Plaintiffs Dan and Karen Bennett ("Plaintiffs") filed a response (Docket Entry No. 72), and CMH Homes filed a reply (Docket Entry No. 81). Also, Defendant Southern Energy Homes Retail Corporation ("Southern Energy Homes") filed a Motion for Summary Judgment (Docket Entry No. 60), to which Plaintiffs filed a response (Docket Entry No. 75), and Southern Energy Homes filed a reply (Docket Entry No. 83). For the reasons stated below, the Court will grant in part and deny in part CMH Homes' motion, and will grant Southern Energy Homes' motion in its entirety.

CMH Homes and Southern Energy Homes (collectively, "Defendants") have jointly filed a Motion to Strike the Affidavit of C. Dan Bennett (Docket Entry No. 79), to which Plaintiffs filed a response (Docket Entry No. 85), and Defendants filed a reply (Docket Entry No. 87). Also, Plaintiffs have filed a Motion to Strike the Declaration of Doug Strong (Docket Entry No.

89), to which Defendants filed a response (Docket Entry No. 93). The Court will deny both motions to strike.

## FACTS

At the end of 2004, Plaintiffs began looking for a new home after their previous manufactured home burned down.[1] Plaintiffs considered rebuilding on the same property. They visited CMH Homes's retail lot in Nashville and had multiple meetings with Linda Haun, a sales representative. Plaintiffs informed Haun that they had concerns about purchasing a manufactured home and were thinking about building a home on their property. (Docket Entry No. 74-1 ¶ 4.) According to Plaintifs, Haun represented that a manufactured home would be "more durable and of a higher quality than a conventionally built home." (*Id.*) Based on Haun's representations and the attractiveness of the price, Plaintiffs decided to purchase from CMH Homes. On January 27, 2005, Plaintiffs entered a Sales Agreement with CMH Homes for a new triple-wide home manufactured by Southern Energy.

Later, on or about May 15, 2005, Plaintiffs entered into a Retailer Closing Agreement with CMH Homes. In the Retailer Closing Agreement, the limited warranty provided that:

> 1. For **new homes**, installation at the initial homesite will be completed in accordance with applicable governmental requirements, and installation of new appliances or equipment by Retailer will be in accordance with manufacturers' specifications and free from defects in materials or workmanship, which warranties extend for a period of 90 days . . . from original delivery.

---

[1] Unless otherwise noted, the facts are drawn from Defendants' statements of material facts (Docket Entry Nos. 58 & 62), the related exhibits, and Plaintiffs' responses thereto (Docket Entry Nos. 74 & 77). Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

> . . . .
> 3. All **implied warranties**, including implied warranties of merchantability, habitability, or fitness for a particular purpose, are disclaimed to the fullest extent permitted by applicable law, and otherwise extend only for the period of Retailer's applicable limited warranty for the home.

(Docket Entry No. 1-2, at 1.) Furthermore, the Homeowner's Manual provided by Southern Energy Homes includes a one-year limited warranty for covered defects. It excludes coverage for certain enumerated defects and cosmetic damage. In bold capital letters, it states:

> Southern Energy expressly disclaims any implied warranties of any kind or nature. To the extent applicable law prohibits the disclaimer of any implied warranty, and in the event that such implied warranty is otherwise extended as a matter of law, such warranty is limited in duration to a period of one year. In no event shall Southern Energy have any liability to the original consumer purchaser(s) or any other person for any incidental or consequential damages.

(Docket Entry No. 63-2, at 7) (emphasis in original omitted).

Upon moving into the home, Plaintiffs discovered what they believed to be defects in its construction and installation. On June 17, 2005, Plaintiffs submitted a written complaint to CMH Homes documenting thirty-five issues with the home and began calling Southern Energy Homes about the same issues. (Docket Entry No. 74-1, Exhibit A.) Although Defendants repeatedly sent crews to remedy the issues, Plaintiffs ultimately filed a Manufactured Home Consumer Complaint Form with the State of Tennessee Fire Marshal's Office[2] on September 11, 2006, alleging nineteen complaints with their manufactured home. (*Id.*, Exhibit B.) On November 2, 2006, John Davis, director of manufactured homes, and Ray Henderson, a manufactured home inspector, visited the

---

[2] The Fire Marshal's Office is responsible for regulating the manufacture and installation of manufactured homes.

Plaintiffs' home to perform an inspection. According to Plaintiffs, Davis explained to them during the inspection that manufactured homes, generally speaking, are cheaply made and built with lower-quality materials than conventionally built homes. (*Id.* ¶ 8.) Although Haun had told Plaintiffs that their home had a higher grade of roof than other manufactured homes, Davis further explained that Plaintiffs' home had a wavy roof typical for manufactured homes because of the quality of materials involved. Davis and Henderson produced a report identifying six items in need of repair. The report explained that CMH Homes would be responsible for addressing three issues: the re-leveling of the entire house, the improper attachment of the decks to the home, and a problem with a hinge in the master bathroom door. Southern Energy Homes would be responsible for addressing two issues: repair of the living room ceiling and cooling problems in two bedrooms. The Plaintiffs would be responsible for the sixth issue: installing more vents on the front of the home.

After CMH Homes represented to the Fire Marshal's Office that the home was level, Davis and Doug Strong, a manufactured home inspector, performed a re-inspection on February 22, 2007. They discovered ongoing problems with the home, all determined to be the responsibility of CMH Homes: the home remained unlevel with a possible bow in the chassis; the electrical and water crossovers were hanging loose underneath the home; and there were mold and inadequate ventilation on the bottom of the home. Because of the particular problems with the leveling, the inspectors opined that the chassis damage may need off-site repair and named a CMH Homes representative whose presence would be required at the next inspection.

Subsequently, in March 2007, CMH Homes and Southern Energy Homes retained an engineering firm that concluded the installation of Plaintiffs' home did not comply with the manufacturer's setup manual and may require disconnecting of the halves of the home to repair properly. According to Plaintiffs, a CMH Homes agent discussed the engineering firm's report with them, explained that they would need to stay in a hotel for several days while the leveling issue was addressed, and encouraged them to allow CMH Homes to buy back the home because it was doubtful whether the problem could be fixed. (Docket Entry No. 74-1 ¶ 8.) CMH Homes never actually asked Plaintiffs to vacate the home for purpose of making these repairs. At the request of a CMH Homes manager, Plaintiffs prepared in June 2007 a consolidated list of all the problems they had experienced with the home since moving into it. (*Id.*, Exhibit C.) Plaintiffs' list totaled six pages and encompassed virtually every area inside the home, as well as problems with the outside structure and underneath the home.

Davis returned to the home at the end of 2007. No written report resulted from this visit. While Davis testified that he discovered the home now met code requirements and therefore closed the State's file, Plaintiffs dispute this account. According to Plaintiffs, Davis told them that he did not need to look underneath the home because it was even worse than before. (Docket Entry No. 74-1 ¶ 15.) Although the house was still not level or up to code, Davis was closing the file because CMH Homes had made an offer to buy back the home from Plaintiffs. (*Id.* ¶ 16.)

After this final inspection, CMH Homes remained in touch with Plaintiffs about repairing the issues of concern to them, despite its subjective belief that such issues were

mere cosmetic defects. Plaintiffs eventually denied access to the property for Defendants' repair crews.

## STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. *See University of Pittsburgh v. Townsend*, 542 F.3d 513, 522 (6th Cir. 2008); *Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade

through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). `

## ANALYSIS

CMH Homes and Southern Energy Homes seek summary judgment as to all causes of action pled in Plaintiffs' verified complaint. Plaintiffs do not oppose summary judgment on their claims for promissory fraud, negligence, negligence per se, violation of the Tennessee Consumer Protection Act, and civil conspiracy. The Court will grant summary judgment as to the claims that Plaintiffs have abandoned. *See Burress v. City of Franklin, Tenn.*, Civil Action No. 3:09-cv-0938, 2011 WL 3651275, at *10-11 (M.D. Tenn. Aug. 17, 2011). The Court now considers the arguments for summary judgment as to Plaintiffs' remaining claims of breach of contract, breach of warranty, and intentional misrepresentation.

**I.     Breach of Contract**

    **A.     CMH Homes**

"'The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.'" *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). In the Retailer Closing Agreement, CMH Homes represented that, *inter alia*, its on-site installation would "be completed in accordance with applicable governmental requirements." (Docket Entry No. 1, Exhibit B, at 1.)

CMH Homes contends it is entitled to summary judgment because the house was constructed according to code. It relies on Davis's deposition testimony that the mobile home's construction met all federal and state code requirements. (*See* Docket Entry No. 59-4, at 44-46.)

However, other portions of Davis's deposition testimony are to the contrary. Davis testified applicable federal regulations required that the home be level within three-fourths of an inch for every twelve feet. (*Id.* at 153-54.) The February 2007 inspection report that Davis read into the record stated the home was unlevel by more than two inches from one half to the other. (*Id.* at 29 & Exhibit 5.) Davis did not go underneath the home during the subsequent inspection. (*Id.* at 75.) Furthermore, Plaintiff Dan Bennett's affidavit states that, at the last inspection, Davis said the house still did not meet code requirements and the state was closing its file only because CMH Homes had made an offer to Plaintiffs. (Docket Entry No. 74-1 ¶ 16.) At trial, Plaintiffs may be able to present this statement into evidence as a prior inconsistent statement to impeach Davis's testimony. *See* Fed. R. Evid. 613(b); *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 638 (6th Cir. 2000). Accordingly, the question of whether the mobile home was constructed according to code remains for the trier of fact.

CMH Homes also contends that Plaintiffs did not give CMH Homes a reasonable opportunity to cure the defects in the home. *See* Tenn. Code Ann. § 47-2-508 (2001). Plaintiff Bennett's affidavit represents that Defendants made more than twenty-five visits to the home over the two-and-a-half year period between July 2005 and December 2007. (Docket Entry No. 74-1 ¶ 9.) The question of whether CMH Homes had a reasonable opportunity to cure remains for the trier of fact.

CMH Homes finally contends that Plaintiffs have no evidence to support their allegation that Defendants' conduct breached the implied covenant of good faith and fair dealing. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). In response, Plaintiffs point to defects in the home that persisted and worsened over a two-and-a-half year period. The

question of whether CMH Homes breached the implied covenant of good faith and fair dealing remains for the trier of fact.

Material disputes of fact preclude summary judgment for CMH Homes on Plaintiffs' breach of contract claim.

### B. Southern Energy Homes

Plaintiffs' claim for breach of contract against Southern Energy Homes fails for lack of privity. Plaintiffs entered the Sales Agreement and Retail Closing Agreement with CMH Homes only, but not Southern Energy Homes. Plaintiffs have pointed to no evidence in the record establishing an agreement made between them and Southern Energy Homes, any other agreement binding Southern Energy Homes to which Plaintiffs could claim third-party beneficiary status, or a principal-agent relationship between Defendants. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001); *Watts v. Mercedez-Benz USA, LLC*, 254 S.W.3d 422, 426-27 (Tenn. Ct. App. 2007). Therefore, summary judgment is appropriate for Southern Energy Homes as to Plaintiffs' claim for breach of contract.

In their memorandum in opposition to summary judgment, Plaintiffs contended that, after deposing Haun and the representative of Southern Energy Homes, they might be able to establish a triable question of fact whether Haun was an agent of Southern Energy Homes. (*See* Docket Entry No. 76, at 3, 12.) The Court granted Plaintiffs' motion to continue (Docket Entry No. 110) and their subsequent motion for definitive time to supplement their response (Docket Entry No. 116). Despite these extensions and Plaintiffs' representation that Haun's deposition was taken, Plaintiffs never filed the promised surreply brief.

## II. Breach of Warranty

### A. CMH Homes

9

CMH Homes contends that Plaintiffs' claim for breach of warranty should fail to the extent that Plaintiffs premise their claim on breach of an implied warranty. The Retailer Closing Agreement states that "[a]ll implied warranties, including implied warranties of merchantability, habitability, or fitness for a particular purpose, are disclaimed to the fullest extent permitted by applicable law, and otherwise extend only for the period of Retailer's applicable limited warranty for the home." (Docket Entry No. 1, Exhibit B.) This language is consistent with the Magnuson-Moss Warranty Act, which states that "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C.A. § 2308(b) (2009). The express warranties in the Retailer Closing Agreement extend for ninety days from original delivery of the home. Because the implied and express warranties extend for ninety days from original delivery, and because Plaintiffs submitted their first complaint to CMH Homes within that ninety-day window, CMH Homes cannot prevail on its argument that the disclaimer automatically bars any implied warranty claim. *See also* Tenn. Code Ann. § 47-2-725(1) (2001) (setting forth a four-year statute of limitations for breach of a sale contract); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491-92 (Tenn. 1975).

CMH Homes next contends that Plaintiffs' implied-warranty claim fails on the merits. While CMH Homes tailors its arguments to the individual warranties, the common thread focuses on Plaintiffs' being able to live in the home and never having to spend a night outside the home because of the issues they complained about. In response, Plaintiffs cite *Bowling v. Jones*, wherein the Tennessee Court of Appeals sustained the trial court's conclusion that the defendants' construction of the plaintiffs' home breached the implied warranty against defects

and the implied warranty of construction in a workmanlike manner. 300 S.W.3d 288, 291-93 (2008) (citing 13 Am. Jur. 2d *Building and Construction Contracts* § 10 (2000)). There, a witness who worked as a professional mason and carpenter testified to severe problems in the construction of the foundation, such that the house was not level and vibrated if someone walked through it. *Id.* While the construction problems in *Bowling* appear to be more severe than what the present record shows in this case, the Court finds that *Bowling* is appropriate authority to deny summary judgment to CMH Homes on the implied-warranty portion of Plaintiffs' claim for breach of warranty.[3]

### B. Southern Energy Homes

The Southern Energy Homes Homeowners' Manual includes a one-year limited warranty. (Docket Entry No. 63-2, at 7.) It goes on to state, in all capital letters:

> Southern Energy expressly disclaims any implied warranties of any kind or nature. To the extent applicable law prohibits the disclaimer of any implied warranty, and in the event that such implied warranty is otherwise extended as a matter of law, such warranty is limited in duration to a period of one year.

(*Id.*)

To state a claim for breach of warranty under the Magnuson-Moss Warranty Act:

> a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts.

*Temple v. Fleetwood Enters., Inc.*, 133 Fed. Appx. 254, 268 (6th Cir. May 25, 2005). Applied to this case, the Court finds that Southern Energy Homes cured the defects for which it was responsible within a reasonable time. Davis testified that, by the time of the follow-up inspection of February 2007, Southern Energy Homes had taken care of all the issues that it was

---

[3] Because CMH Homes makes no argument against the express-warranty portion of Plaintiffs' claim, the entire claim for breach of warranty will be decided by the trier of fact.

supposed to address, based on the initial inspection conducted three-and-a-half months prior. (Docket Entry No. 63-5, at 30:13-19.) All the remaining issues were the responsibility of CMH Homes as the dealer. (*Id.* at 30:9-12, 31:1-4; *see also* Docket Entry No. 59-4, Exhibit 5.) Because Plaintiffs cannot make out an element of their breach of warranty claim, Southern Energy Homes is entitled to summary judgment on this claim.

### III. Intentional Misrepresentation

#### A. CMH Homes

Plaintiffs base their intentional misrepresentation claim on the evidence that Haun, a CMH sales representative, stated to them that a manufactured home would be more durable and of a higher quality than a conventionally built home and that their home would have a higher-quality roof than other manufactured homes. Defendants contend that the claim should fail on both procedural and substantive grounds.

Because Haun made the statements prior to the parties entering the Sales Agreement in January 2005 and this action was not filed until December 2008, Defendants first ask the Court to find the claim time-barred by the three-year statute of limitations. *See Alexander v. Third Nat'l Bank*, 915 S.W.2d 797, 799 (Tenn. 1996); *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). That statute begins to run "'when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof.'" *Stanfort Constr. Co.*, 206 S.W.3d at 459 (quoting *Med. Educ. Assistance Corp. v. State*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999)). CMH Homes contends that, to the extent Haun's statements are false, Plaintiffs should have discovered their falsity by June 2005, when Plaintiffs prepared their first list of defects with the home. Plaintiffs contend they could not have reasonably been expected to discover the falsity of Haun's statements until Davis came to their

12

home in November 2006. During his first inspection of the home, Davis communicated to Plaintiffs that, generally speaking, manufactured homes are cheaply made, use lower-quality materials than conventionally built homes, and typically have wavy roofs because of the materials involved. Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that the trier of fact could find for Plaintiffs on this issue. Plaintiffs filed this action less than three years after Davis's November 2006 visit. Thus, summary judgment is inappropriate on statute of limitations grounds.

To make out a claim for intentional misrepresentation, Plaintiffs must show all the following elements:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Metro Gov't of Nashville & Davidson Cnty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)). Because the first element requires a statement of past or present fact, "puffing or other sales talk" and "statements of opinion" are not actionable. *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982); *accord Sunderhaus v. Perel & Lowenstein*, 388 S.W.2d 140, 142 (Tenn. 1965); c*f. Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 101 (Tenn. Ct. App. 1996) (explaining that defendants are not liable in the products liability context for "puffing" statements expressing the seller's general opinion about a product's character or quality). For example, where a real estate agent represented to prospective homeowners that the developer had "found a much better builder" with "better house plans for those lots" in the development, the Tennessee Court of Appeals reversed the trial court's judgment holding the

developer liable for misrepresentation because the agent had merely made statements of opinion. *Harrison v. Avalon Props., LLC*, 246 S.W.3d 587, 601 (Tenn. Ct. App. 2007). Courts in other jurisdictions have likewise held that statements promoting a product's quality over a competing product do not count as actionable misrepresentations. *See, e.g., W.J. Bush & Co. v. Van Camp Sea Food Co.*, 203 P. 1026, 1027 (Cal. Ct. App. 1921); *Chic Promotion, Inc. v. Middletown Sec. Sys., Inc.*, 688 N.E.2d 278, 282 (Ohio Ct. App. 1996); *Silverman v. Samuel Mallinger Co.*, 100 A.2d 715, 719 (Pa. 1953); *Shaw Equip. Co. v. Hoople Jordan Constr. Co.*, 428 S.W.2d 835, 838-39 (Tex. App. 1968).

Applied to this case, the Court finds that Haun's alleged remarks were non-actionable statements of opinion. Haun's comments on the durability and quality of materials in manufactured homes and comparisons to conventional homes amount to puffing or sales talk, rather than representations of fact. Therefore, Plaintiffs' claim for intentional misrepresentation must fail as a matter of law, and CMH Homes is entitled to summary judgment.

### B. Southern Energy Homes

In addition to Haun's failure to make an actionable statement of fact, Southern Energy Homes is also entitled to summary judgment because Plaintiffs have not created a triable question of fact as to whether Haun is an agent of Southern Energy Homes. Plaintiffs requested additional time to take Haun's deposition and submit additional briefing on this issue. The Court twice granted those requests. (*See* Docket Entry Nos. 110 & 116.) While Plaintiffs confirmed that Haun was deposed, Plaintiffs never submitted additional briefing on the agency issue. Plaintiffs have pointed to nothing in the record that would preclude summary judgment for Southern Energy Homes on the intentional misrepresentation claim.

### IV. Motions to Strike

Defendants jointly moved to strike the affidavit of Plaintiff C. Dan Bennett. Defendants contend that the Bennett affidavit contains hearsay, statements not based on personal knowledge, and testimony contrary to Bennett's sworn deposition. The only portion of the affidavit relevant to the Court's decision to deny in part CMH Homes' motion for summary judgment is Bennett's statement that, at the final inspection, Davis said the house still was not up to code. As the Court explained *supra*, Plaintiffs may be able to introduce this testimony at trial as extrinsic evidence of a prior inconsistent statement, pursuant to Federal Rule of Evidence 613(b). The Court need not reach the rest of Defendants' objections, as they are not germane to the Court's decision to deny in part CMH Homes' motion for summary judgment. Therefore, the Court will deny Defendants' motion to strike the Bennett affidavit without prejudice to renew these objections at trial.

Plaintiffs moved to strike the declaration of Doug Strong, contending that it was untimely filed as part of Defendants' reply in support of their motion to strike the Bennett affidavit. The Strong declaration is offered to bolster the credibility of Davis's deposition testimony concerning the home's compliance with state and federal codes. The Court must not resolve credibility questions at the summary judgment phase, and thus the Strong Declaration is not dispositive of the issues in the present motion. The Court denies as moot Plaintiffs' motion to strike the Strong Declaration.

## **CONCLUSION**

For all of the reasons stated, CMH Homes's Motion for Summary Judgment (Docket Entry No. 56) will be granted as to Plaintiffs' claims for promissory fraud, negligence, negligence per se, violation of the Tennessee Consumer Protection Act, civil conspiracy, and intentional misrepresentation, and denied as to Plaintiffs' claims for breach of contract and

15

breach of warranty. Southern Energy Homes's Motion for Summary Judgment (Docket Entry No. 60) will be granted in its entirety, and Southern Energy will be dismissed as a defendant from this case.

Defendants' Motion to Strike the Bennett affidavit (Docket Entry No. 79) will be denied without prejudice to renew these objections at trial. Plaintiffs' Motion to Strike the Strong declaration (Docket Entry No. 89) will be denied as moot.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE