**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DAN BENNETT and KAREN BENNETT,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 3:08-01212** **Judge Sharp** |
| **CMH HOMES, INC. d/b/a LUV NASHVILLE,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

On November 6, 2012, this Court entered an Order (Docket No. 177) and Findings of Fact and Conclusions of Law (Docket No. 178) finding in favor of Plaintiffs Dan and Karen Bennett and against Defendant CMH Homes, Inc. d/b/a Luv Nashville on their breach of contract and breach of warranty claims. Bennett v. CMH Homes, Inc., 2012 WL 5416481 (M.D. Tenn. Nov. 6, 2012). The Court deferred ruling on the remedy to be awarded, and gave the parties sixty days to explore the possibility of settling the case.

At the conclusion of the sixty day period, the parties were to file a Joint Status Report, but have not done so. However, Magistrate Judge Brown conducted a settlement conference on December 11, 2012, and reported that the parties were unable to reach a mutually agreeable resolution of the matter (Docket No. 182). Accordingly, it appears the parties are unable to settle this case, and the Court turns to the remedy to be awarded.

## I. LEGAL LANDSCAPE

Although the Court addressed the liability issue in its rulings on November 6, 2012, the

Court did make "some preliminary determinations and . . . certain observations," regarding Plaintiffs' request for both revocation of acceptance and money damages. Because they encompass many of the guiding legal principles relating to the question of the remedy to be awarded, the Court summarizes those observations and determinations as follows:

→ Whether to grant revocation of acceptance or rescission is a matter of discretion for the trial court, but "if an award of damages would be an adequate remedy, rescission will not be granted." Case Handyman Serv. of Tennessee, Inc. v. Lee, 2012 2150857 at * 6 (Tenn. Ct. App. June 13, 2012).

→ "Generally speaking, damages for breach of contract include only such as are incidental to or directly caused by the breach and may be reasonably supposed to have entered into the contemplation of the parties." BVT Lebanon Shopping Center, Ltd. v. Wal-Mart Stores, Inc., 48 S.W.3d 132, 136 (Tenn. 2001) (citation omitted).

→ Plaintiffs have "the burden of proving the damages sustained," and, "[w]hile damages do not have to be proved exactly, they must be proved with a reasonable degree of certainty to allow the trier of fact to make a fair assessment without speculation." Stonecipher v. Estate of Gray, 2001 WL 468673 at *6 (Tenn. Ct. App. 2001).

→ If revocation of acceptance is granted, Defendant would likely be entitled to some sort of set-off, with the burden being on Defendants to establish that set-off is appropriate. Wilson v. Hill, 1992 WL 52711 at *2 (6th Cir. 1992) (citing, Polk v. Torrence, 405 S.W.2d 575, 576 (1966)).

→ While the general rule is punitive damages "are not proper in breach of contract cases," they may be awarded "in cases involving 'fraud, malice, gross negligence, or oppression.'" Medley v. A.W. Chesterton Co., 912 S.W. 2d 748, 753 (Tenn. Ct. App. 1995), and may be awarded in breach of warranty cases where clear and convincing evidence shows a defendant's wrongful actions were intentional, fraudulent, malicious, or reckless," White v. Empire Exp., Inc., 2012 WL 4497280 at *21 (Tenn. Ct. App. Sept. 27, 2012)..

→ Because the purpose of prejudgment interest is to fully compensate a plaintiff for the loss incurred while a case winds its way through trial, any such award may be reduced for the delay occasioned by a plaintiff. See, Meyer v. Amerisource Bergen Drug Corp., 264 Fed. Appx. 470, 479 (6th Cir. 2008); Metro. Gov't of Nashville & Davidson County v. BFI Waste Serv. LLC, 2012 WL 1018946 at ** 12-13 (Tenn. Ct. App. Mar. 22, 2012) Benetic v. M/Y Athena Alexander, 113 Fed. App'x 757, 759 (9th Cir. 2004).

→ Even though Tennessee law provides that an agreement "may limit or alter the measure of damages recoverable," Tenn. Code Ann. § 47-2-719, such clauses may, as a matter of law, be found to be unconscionable. See, Fifth Third Leasing Co. v. Cherokee Pontiac, 2002 WL 407224 *2 (Tenn. Ct. App. 2002).

→ Ordinarily, damages for mental anguish are not recoverable for a breach of contract claim, nor are they recoverable under the Uniform Commercial Code, see, Pedroza v. Loma Auto Mall, Inc., 625 F. Supp.2d 1156, 1161-62 (D.N.M. 2009), and, in the absence of any controlling authority to the contrary, the Court would not award damages for mental anguish.

(Docket No. 178 at 20-24).

In addition to the foregoing, two other points merit discussion prior to assessing the remedy to which Plaintiffs are entitled.

First, Plaintiffs filed suit alleging breach of warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*., "and/or other applicable law," (Complaint ¶ 28), and in their post-trial briefing, both Plaintiffs and Defendants reference Tennessee's enactment of the Uniform Commercial Code ("UCC"), 47-1-101 *et seq.*

"The MMWA is a remedial statute designed to protect consumers against deceptive warranty practices," and "provides a federal private cause of action for a warrantor's failure to comply with the terms of a 'written warranty, implied warranty or service contract.'" Anderson v. Gulf Stream Coach, Inc., 662 F.3d 775, 781 (7th Cir. 2011) (citation omitted); see, Ward Adventures, LLC v. Buddy Gregg Motor Homes, Inc.., 2007 WL 869619 at *8 (E.D. Tenn. March, 20, 2007). "Suits under the MMWA may be brought in either federal or state court, and consumers are permitted to recover reasonably-incurred costs and expenses, including attorneyss fees, if they prevail in such suits." Walton v. Rose Mobile Homes, Inc., 298 F.3d 470, 474 (5th Cir. 2002).

Second, Defendants seek to limit Plaintiffs' remedies and/or reduce damages based upon the

following provision from the Sales Agreement:

> . . . Buyer(s) agree(s), that if they are entitled to any damages against the Seller, the damages are limited to the lesser of either the cost of needed repairs or reduction in the market value of the unit caused by the lack of repairs. In any case, the Seller will not be required to pay the Buyer(s) any incidental or consequential damages. Buyer(s) also agrees [sic] that once the unit has been accepted, even though the manufacturer(s)' warranty does not accomplish its purpose, that the Buyer cannot return the unit to the Seller and seek a refund for any reason.

(Pfs' Ex. 3 at 2).

Although the UCC contemplates the possible limitation of damages based on the language in a contract, it specifically excludes limitations which are unconscionable. See, Tenn. Code Ann. § 47-4-719. "The question of whether a contract or provision thereof is unconscionable is a question of law" for the court to decide. Taylor v. Butler, 142 S.W.3d 277, 285 (Tenn. 2004). Factors which go into the determination include "the attendant circumstances"; "weaknesses in the contracting process"; "whether the terms are unreasonably favorable to the drafter"; "whether the terms provide favorable default remedies to one party and deny them to the other"; and "whether the terms are so one-sided that 'no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" Lee v. Stansfield, 2009 WL 4250155 at *9 (Tenn. Ct. App. 2009).

Under the facts in this case, the clause at issue is both procedurally and substantively unconscionable. See, Baptist Mem. Hosp. v. Argos Const. Corp., 308 S.W.3d 337, 346 (Tenn. Ct. App. 2009) (defining procedural unconscionability as being "deprived of a meaningful choice," and substantive unconscionability as involving "terms of the contract [that] are overharsh or one-sided"). "The agreement at issue in this case is a standard form contract that leaves the consumer with little or no choice as to its terms." Desgro v. Pack, 2013 WL 84899 at *2 (Tenn. Ct. App. Jan. 8, 2013).

While it may not be an adhesion contract in the sense that Plaintiffs were free to shop for a manufactured home elsewhere, the fact remains that they are relatively unsophisticated in business dealings and were not afforded an opportunity to bargain as to the terms of the Sales Agreement. More importantly, the clause is wholly one-sided and overly harsh because it prohibits incidental and consequential damages in all cases, and prohibits return of the home upon acceptance, even if the home falls apart around the buyer's ears. See, Sunny Indus., Inc. v. Rockwell Int'l Corp., 1999 WL 220109 at *12 (7th Cir. April 12, 1999) (" a purchaser hardly would have agreed to limit the seller's liability for consequential damages if it had known that the seller would scuttle the only remedies allowed under the contract"); Long v. Fairbanks Farms, Inc., 2011 WL 1516378 at *21 (D. Me. May 31, 2011) (citation omitted) ("'[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.'").

## II. FINDINGS AND CONCLUSIONS ON REMEDY

Having considered the evidence introduced at trial, the Court finds that revocation of acceptance is warranted under the facts of this case because an award of damages, by itself, would be inadequate.

So far as relevant, Tenn. Code Ann. § 47-2-608 provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
> > (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
> >
> > (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before

acceptance or by the seller's assurances.

Tenn. Code Ann. § 47-2-608(a). With regard to this provision and in particular the apparently subjective language contained therein, the Tennessee Court of Appeals has stated:

> It is important to note that the language of the statute, "a buyer may revoke his acceptance if the nonconformity substantially impairs the value to him," involves subjectivity. The UCC does not define "substantial" impairment, probably because of the privilege of subjectivity, which may vary from person to person. Even so, any subjective decision of a buyer is subject to some scrutiny, reasonably exercised; revocations based on mere whim or defects so trivial as to evince sheer unreasonableness should be excluded. But the language "value to him" may not be lightly regarded; if the Legislature had intended to exclude damages that a reviewer might describe as trivial, as the defendant argues, it could have so provided. Whether the nonconformity substantially impaired the value of the [item] to the plaintiff under the circumstances of this case was for the jury to determine.

O'Bryant v. Reeder Chevrolet Co., Inc., 1999 WL 233440 at *3 (Tenn. Ct. App. April 15, 1999). That court has also stated: "While it is true that Tenn. Code Ann. § 47-2-608 creates a subjective test in the sense that the requirements of a particular buyer must be examined and deferred to, the evidence with regard to the substantial impairment to a particular buyer must be measured in objective terms" and, "[t]hus, 'substantial impairment' requirement should be construed to exclude attempted revocations based upon trivial defects or defects that can be easily repaired." Harper v. Mitchell, 1985 WL 4040 at *2 (Tenn. Ct. App. Dec. 4, 2005).

Here, of course, the Court was the factfinder and, from the evidence presented at trial, it is clear that the nonconformity in the home substantially impaired its value to Plaintiffs. The Court also finds that a reasonable person would view the many problems with the home as substantially impairing its value, problems which were far from trivial, and problems which Defendant did not correct.

In determining that revocation of acceptance is appropriate, the Court has considered, and

hereby rejects, Defendant's assertion that Plaintiffs failed to timely revoke acceptance.

"Acceptance occurs when the buyer, after a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he or she will retain them in spite of their nonconformity, or fails to make an effective rejection, or does any act inconsistent with the seller's ownership." Audio Visual Artistry v. Tanzer, 2012 WL 6697600 at *15 (Tenn. Ct. App. Dec. 26, 2012) (citing, Tenn. Code Ann. § 47–2–606). "Rejection of goods must be within a reasonable time after their delivery or tender." Tenn. Code Ann. § 47-3-602(1). "A buyer must do some affirmative act in order to reject goods, and the default result of the buyer doing nothing is acceptance." Audio Visual, 2012 WL 6697600 at *15.

While the Plaintiffs may have never told Defendant in so many words that they were "revoking" acceptance of the home, they did affirmatively act to reject the goods by repeatedly bringing to the Defendant's attention the numerous and substantial defects in the home, and reasonably relied on Defendant's (usual) and repeated assurances that the home could (and would) be fixed. Moreover, Plaintiffs made clear that they did not want the home, and Defendants at one point offered to buy it back.

Plaintiffs' attempt to reject acceptance was made apparent at trial, even though Defendant repeatedly invoked Rule 408 of the Federal Rules of Evidence to bar testimony about the settlement efforts in this case. This is best exemplified by the following exchanges:

> Q. [Plaintiffs' Counsel] Okay. Now, between this April 2007 conversation with Mr. Baker and the November date that Mr. Clotfelter came out, were you making any efforts to return this home to Clayton Homes?
>
> A. [Mr. Bennett] Yes. I was discussing with Mr. Baker about buying the home back.
>
> Q. What did you do? Did you do anything to accomplish

A. I asked him to buy it back. I went and –

MR. RUTCHOW [Defendant's Counsel]: Your Honor, at this point I'm going to object as this sure sounds like settlement.

THE COURT: Sustained.

Q. [Plaintiffs' Counsel] Here's what I'm trying to ask: Did you look into a mortgage?

A. Yes, I did. I found a builder. Keith Clotfelter thought we needed to build our own house. We had – at this late date we hadn't accomplished anything. I went out and found a builder. I picked out a floor plan. I got -- I found a loan to try to build my own house and get Mr. Baker to buy this one back and get it off my property.

Q. And that took a little bit of time to get done?

A. Yes.

Q. And so when Mr. Clotfelter came out to your house, did you explain that to him? Or what discussions did you have with him?

A. Mr. Baker had asked me to allow Mr. Clotfelter to come back out and work on the house some, to make it more liveable for the time being while we were trying to decide if he was going to buy the house back. I was talking to Mr. Baker all along about trying to get a loan.

MR. RUTCHOW: Your Honor --

A. To buy the house back.

MR. RUTCHOW: – if we're talking about – It sounds like settlement negotiations. Talking about what to do to buy the house back, getting a loan, and what we're going to do to resolve this. Obviously, that is right back into settlement negotiations.

(Tr. Trans. at 185-187).

Rule 408(a) generally prohibits the introduction of evidence related to "conduct or a statement made during compromise negotiations about the claim" to "either prove or disprove the validity or amount of a disputed claim[.]" Fed. R. Evid. 408(a). However, subsection (b) provides that a court "may admit this evidence for another purpose, such as proving a witness's bias or

prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

"By its terms, FRE 408 is a permissive rule, applying to a set of circumstances it specifically identifies, including 'to prove or disprove the validity or amount of a disputed claim. . . .' Fed. R. Evid. 408(a)." Biery v. United States, 2012 WL 4497656 at *3 (Fed. Ct. Cl. Sept. 27, 2012). Moreover, "the words 'such as' [in subsection (b)] precede only examples of instances where FRE 408(a) does not apply and is not an exhaustive list of all possible situations." Id. "Thus, the court must distinguish between the use of settlement communications to resolve a claim and the use of such communications to determine other issues once the court rules on the claim's merits." Id.

Here, the testimony attempted to be elicited was not to establish liability, but to show that Plaintiffs attempted to revoke acceptance. This is a necessary element for recovery under the Uniform Commercial Code. See, § 47-4-608.

Regardless, it is also clear from the evidence that the possibility of a buy-back was placed on the table by the Defendant, after its efforts to cure failed. Even though that occurred long after the home was placed on the property, the Court finds the time period was not unreasonable under the facts of the case, and in light of the purpose of the reasonable notice requirement.

"Whether the notice of revocation of acceptance was made within a reasonable time is a question of fact for the trier of fact to determine." Tidy Didy Di-Deeland, Inc. v. Bristol Jeans, Inc., 1993 WL 209550 at *5 (Tenn. Ct. App. June 15, 1993). The requirement that a party revoke acceptance within a reasonable time serves to "defeat[] bad faith on the buyer's part and protect[] sellers against noncurable and dubious, stale claims as to accepted goods." Audio Visual, 2012 WL 6697600 at *16 (citation omitted). It also serves "'to give sellers an opportunity to cure and to

permit them to assist in minimizing buyers' losses, ... [e]ven though the final notice comes a considerable time after the sale.'" Tidy Didy Di-Deeland, 1993 209550 at *4 (quoting, 1 White and Sumners, UNIFORM COMMERCIAL CODE § 8-3, at 410 (3d ed. 1988)).

Plaintiffs were required to allow Defendant an opportunity to cure. See, Samples v. Guerdon Industries, Inc., 1986 WL 10922 at *3 (Tenn. Ct. App. Oct. 7, 1986) ("the remedy of revocation of acceptance will be generally resorted to only after attempts of adjustment have failed").[1] They will not be penalized because of Defendant's repeated failed assurances and repeated failures to cure. See, Id. ("Had the plaintiff allowed the defendant to attempt to cure the nonconformity and those efforts failed, then he could still have revoked his acceptance").

"Under Tenn. Code Ann. § 47-2-711(1), a buyer who rightfully rejects or justifiably revokes acceptance may cancel the contract and recover so much of the price as has been paid." Wings Mfg. Corp. v. Lawson, 2005 WL 1950115 at *5 (Tenn. Ct. App. Aug. 12, 2005). "The buyer may also be entitled to incidental and consequential damages." Id.

In their proposed findings and briefing, Plaintiffs contend that they are entitled to recover the full contract amount of the home – $109,597.57, plus $80,000.00 in interest paid to date. Defendants argue that (1) only the principal that has been paid is recoverable; (2) this sum must be reduced for the use of the property by Plaintiffs; and, (3) based upon Plaintiffs' testimony regarding the cost of their mortgage and/or renting an apartment, Plaintiffs are entitled to nothing. The Court is unpersuaded by either position.

Tennessee law allows "a party to assert a claim of setoff where complete justice and equity

[1] Likewise, under the MMWA, "[b]efore bringing a suit for breach of warranty, the consumer must give persons under the warranty a reasonable opportunity to 'cure' their failure to comply with the obligations at issue." Walton, 298 F.3d at 474.

cannot be meted out to the parties otherwise." Conister Trust Ltd. v. Boating Corp. of America, 2002 WL 389864 at *20 (Tenn. Ct. App. 2002) (citation omitted). Further, "generally applicable principles of law and equity can be used to supplement [but not supplant] the UCC," C-Wood Lumber Co. inc. v. Wayne County Bank, 233 S.W.3d 263, 280 (Tenn. Ct. App. 2007), and courts have allowed a set-off of the reasonable value of the home against the damages owed in actions under the U.C.C. in cases involving manufactured/mobile homes. See, Lawrence v. Modern Mobile Homes, Inc., 562 S.W.2d 729, 732 (Mo. App. 1978) (collecting cases).

The evidence presented at trial indicates that Plaintiffs made $1,400 monthly mortgage payments on their home, and have done so for 88 months, totaling $123,200.00.[2] However, Plaintiffs have also had the use of their home for this period, and have not had to pay for housing elsewhere.

It would be a wholly unwarranted windfall for Plaintiffs to recoup the entire amount they have paid to date, and, therefore, the Court finds that Defendants are entitled to offset the reasonable rental value for this period. See, Zaire v. Roshan-Far, 2012 WL 1965606 at *6 (Tenn. Ct. App. May 31, 2012) (trial court "did not err in granting defendant a set-off for rental value of the premises" where, even though Plaintiff was "not able to operate his business as he had planned. . . he had use of the property over the period at issue and, in doing so, received the benefit thereof.").

Defendant urges the Court to use the mortgage payment or the rental price of an apartment (which Mrs. Bennett testified would be from $1,525 to $1,990 a month) as the set-off amount, but these are not ideal figures for comparison purposes because the mortgage payment included interest,

[2] Although approximately two months have passed since the close of trial, the Court will not assess any additional amounts against either party as a result of the Court's unilateral decision to provide the parties with an opportunity to settle the case.

and both figures are based upon a residence being in good (if not pristine) condition, which Plaintiffs' home is not. Therefore, an adjustment must be made and, having considered the matter, the Court finds an appropriate rental amount for the home to be $1,000 a month. With the adjustment, Plaintiffs are entitled to recover $35,200.00 (88 months x $400).

Plaintiffs also seek various sums as incidental and consequential damages. Under the UCC, incidental and consequential damages are described as follows:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include:
>
>> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>>
>> (b) injury to person or property proximately resulting from any breach of warranty.

Tenn. Code Ann. § 47-2-715.

Plaintiffs request the entirety of the interest allegedly paid to date – $80,000. That lump sum request is denied because some of the interest Plaintiffs have paid is encompassed within the $35,200.00 amount to be awarded. Further – and given that Plaintiffs do not claim that they had the wherewithal to pay cash at the time of closing – had the house been as warranted, or had Plaintiffs purchased a different home, they would have had to make interest payments.

Plaintiffs also seek lost wages in the amount of $9,600.00, representing six weeks of vacation time that Mr. Bennett claims he used to attend to the problems with the house. This request is

denied because, even though Plaintiffs undoubtedly spent a considerable amount of time in dealing with the Defendant and the problems with their home, the evidence presented at trial did not come close to showing that Mr. Bennett spent six weeks in that endeavor. Moreover, Plaintiffs do not claim any actual lost wages (Mr. Bennett claims not to have kept track of the time), and the money they seek is money that Mr. Bennett actually received from his employer.

Plaintiffs next request miscellaneous costs in the amount of $4,038.29. That request will be granted because it represents reasonable expenses and charges under Tenn. Code Ann. § 47-2-715, and includes appraisal and permit fees, television and phone jacks, flood lights, and the purchase of screen doors and shower heads, all of which was spent for this particular home.

Plaintiffs also request $25,250.00 for "future expenses." This consists of the amount required to rent a furnished apartment for ten months at $1,525.00 per month, and $10,000.00 to move and store their furniture for that period. The Court will not award these expenses because they are speculative at best, and not within the contemplation of the parties at the time of contracting. That Plaintiffs may want to have a home custom-built is their choice, and whether that will take ten months is open to question. Regardless, Plaintiffs have to pay to live somewhere, just the same as if they were able to continue living in the house that they now inhabit. Further, even if moving expenses could be thought to be consequential damages of the breach, Plaintiffs have failed to establish what that amount would be, as the $10,000.00 figure includes not only moving, but also storage for ten months.

Finally on the issue of damages, Plaintiffs seek punitive damages and damages for mental anguish allegedly caused by Defendant's actions (or inactions) and their having to live in the home. As this Court made clear in its prior ruling however, (1) "there is no clear and convincing evidence

that punitive damages are appropriate in this case, and, therefore, punitive damages will not be awarded"; (2) "[i]n the absence of any controlling authority to the contrary, the Court will not award damages under the U.C.C. for Plaintiffs' alleged mental anguish"; and (3) "Plaintiffs have failed to establish to the Court's satisfaction the 'severe mental injury' usually associated with an award for mental anguish." Bennett, 2012 WL 5416481 at ** 12 & 13.

In addition to damages, Plaintiffs seek prejudgment interest and attorney's fees. With regard to the former, "[t]he award of prejudgment interest is within the sound discretion of the trial court," L-S Indus. Inc. v. Matlack, 448 Fed. Appx. 597, 598 (6th Cir. 2012). Since its purpose is to make a plaintiff whole while at the same time not penalize a defendant, Coleman Mgmt., Inc. v. Meyer, 304 S.3d 340, 354 (Tenn Ct. App. 2009), prejudgment interest will be awarded in this case.

The Court will not, however, award prejudgment in the amount of 10% per annum as requested by Plaintiffs, and permissible under Tennessee law. Not only would this be a "windfall particularly in light of the current economic climate[,]" Krystal Co. v. Caldwell, 2012 WL 876794 at * 11 (E.D. Tenn. 2012), it would also be a windfall because the $39,238.29 to be awarded was not liquidated as of the date the case was filed, but accrued over time. And, it would be a windfall because this case was delayed for a period of fourteen months due to Plaintiffs' requested continuances. See, Metro. Gov't of Nashville & Davidson County v. BFI Waste Serv. LLC, 2012 WL 1018946 at ** 12-13 (Tenn. Ct. App. Mar. 22, 2012) (noting that among factors to be considered in award or denial of prejudgment interest is unreasonable delay of the proceedings by a party); see, Benetic v. M/Y Athena Alexander, 113 Fed. App'x 757, 759 (9th Cir. 2004) (finding district court "correctly awarded prejudgment interest reduced by the period of undue delay" caused by plaintiffs).

A court is "entitled to weigh the equities in determining the appropriate amount of prejudgment interest." Varner Const. Co., Inc. v. Marrs, 2002 WL 818234, *13 (Tenn. Ct. App. 2002). Having done so, the Court will award prejudgment interest in the amount of 10% of the total award, or $3,923.82. See, id. (affirming chancellor's imposition of prejudgment interest at a flat set amount, and his refusal to hold defendant liable for prejudgment interest at a rate of 10% per annum).

Finally, Plaintiffs request attorney's fees under the MMWA which provides that "[i]f a consumer finally prevails . . . may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate." 15 U.S.C. § 2310(d)(2). Tellingly, the statute is discretionary to some extent, speaks about the consumer "finally" prevailing, and requires that fees be reasonable and based upon the time actually expended.

The Court will defer ruling on the request for attorney's fees at this time. Depending upon whether Defendant appeals, Plaintiffs may or may not be prevailing parties when the case becomes final. Moreover, the Court does not know the amount of fees requested, or have before it any basis to conclude whether the amount of time and the rate charged was reasonable for claims on which the Plaintiff prevailed and for which the MMWA allows attorney's fees.

## IV. CONCLUSION

On the basis of the foregoing, the Court will order revocation of acceptance, award damages in the amount of $39,238.29, and award prejudgment interest in the amount of $3,923.82. The Court

will defer ruling on Plaintiffs' request for attorney's fees.

An appropriate Order will be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE